UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Oyindamola Adeogun,

        Plaintiff,

v.

City of St. Paul, City of
St. Paul Police Department,
and David Pavlak,
Police Officer,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-3190 ADM/JSM

_____

Michael D. Gavigan, Esq., Wilson Law Group, Minneapolis, MN, on behalf of Plaintiff.

Judith A. Hanson, Esq., St. Paul City Attorney's Office, St. Paul, MN, on behalf of Defendants.

_____

## I. INTRODUCTION

On October 22, 2013, the undersigned United States District Judge heard oral argument on Defendants City of St. Paul ("City") and St. Paul Police Officer David Pavlak's ("Pavlak") Motion for Summary Judgment [Docket No. 14].[1]  Plaintiff Oyindamola Adeogun ("Adeogun") opposes the motion. For the reasons stated below, Defendants' motion is granted.

## II. PROCEDURAL POSTURE

In her brief and at the hearing, Adeogun argued the Defendants' summary judgment motion is premature and that further discovery is needed to determine whether material questions of fact exist.  The Court granted Adeogun thirty (30) days to conduct further discovery and submit supplemental briefing.  Adeogun has not submitted supplemental briefing and the Court

---

[1] Plaintiff agrees the St. Paul Police Department is not a proper party to this case and should be dismissed.  Mem. Opp'n Summ. J. [Docket No. 20] at 2.

has received no communication from Adeogun indicating any intent to do so. Therefore, the Court will now address the summary judgment motion based on the briefing and documents submitted and on the arguments made during the October hearing.

### III. BACKGROUND

On a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). Therefore, the facts are expressed here entirely from the Plaintiff's perspective, even though the Defendants strongly deny the recited facts are accurate.

On the afternoon of July 1, 2012, Adeogun was driving northbound on Highway 61 in Saint Paul. Compl. [Docket No. 1] ¶ 7. Adeogun heard a siren, looked in the rearview mirror, saw a police car with its lights flashing, and pulled over to the side of the road as soon as she safely could. Id. ¶ 8; Judith A. Hanson Aff. [Docket No. 18] Ex. B, at 27-28.[2] She alleges she pulled over to the side of the road approximately ten seconds after she noticed the police car. Mem. Opp'n at 2. The police car pulled up and stopped behind her Nissan SUV. Id. at 11. Officer Pavlak exited his squad car, pulled out his firearm, aimed it at Adeogun's car, and yelled for Adeogun to get out of her car with her hands up. Hanson Aff. Ex. B, at 27-28. Adeogun complied. When she saw the gun she screamed and begged Pavlak not to shoot her. Id. at 28. Pavlak kept his gun drawn as he questioned her. Id. Mem. Opp'n at 3-4. Adeogun was crying and visibly shaken. Hanson Aff. Ex. B, at 28. Pavlak holstered his gun and accompanied

---

[2] Hanson Aff. Ex. B consists of two transcripts of proceedings before Judge Judith M. Tilsen in Ramsey County District Court. The first transcript records Judge Tilsen's ruling in State of Minnesota v. Oyindamola Abake Adeogun, Court File No. 62-VB-12-1208. The second transcript records testimony from Adeogun and Pavlak before Judge Tilsen in the same case. For simplification and to reduce confusion, citations to Ex. B will provide the consecutive CM/ECF filing pagination rather than the separate paginations of the two transcripts.

Adeogun back to her car to get her driver's license. Id. at 28-29.

Pavlak asked for Adeogun's license, registration and insurance information in a manner Adeogun felt was demeaning and racist. Id. at 29. Adeogun provided her information. Pavlak issued Adeogun a citation for failure to yield to an emergency vehicle and for speeding.

After a court trial, Ramsey County Judge Judith M. Tilsen found Adeogun guilty of failure to yield to an emergency vehicle displaying emergency lights and siren under Minn. Stat. § 169.20, subd. 5(a). Id. at 2-3. Judge Tilsen also found Adeogun guilty of speeding, by driving over 80 mph in a 60 mph zone. Id. at 4. The convictions have not been appealed.

## IV. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### B. 42 U.S.C. § 1983

"Section 1983 imposes liability for certain actions taken 'under color of' state law that deprive a person 'of a right secured by the Constitution and laws of the United States.'" Dossett

v. First State Bank, 399 F.3d 940, 947 (8th Cir. 2005) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 931 (1982)).

### 1. Individual v. Official Capacity

Claims under 42 U.S.C. § 1983 may be made against a public official in his individual or official capacity. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation omitted). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Id. at 165-66 (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690 n.55 (1978)). The Eighth Circuit has established a bright line rule that: a plaintiff must clearly sue public officials in their individual capacity or it will be assumed the official is sued in his official capacity. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). As the Eighth Circuit has explained, public servants are entitled to clear and proper notice that they may be exposed to personal liability and damages. Id.; see also Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619-20 (8th Cir. 1995), and Lopez-Buric v. Notch, 168 F. Supp. 2d 1046, 1050 (D. Minn. 2001) ("the caselaw in this circuit is sufficiently clear to inform plaintiffs that if they wish to sue § 1983 defendants in their individual capacity, they must include unambiguous language noting that fact in their complaint"); but cf. McKenzie v. Frokjer, No. 07-3413, 2009 U.S. Dist. LEXIS 45627 (D. Minn. Feb. 23, 2009) (where pro se plaintiff's complaint was read liberally and defendant public official was clearly on notice of the suit against him in his individual capacity, defendants' motion to dismiss was denied).

Adeogun argues that by asserting a common law assault claim against Pavlak in the

Complaint, ¶¶ 49-53, Pavlak was sufficiently on notice that he has been sued in his individual capacity. However, Adeogun is represented by counsel and therefore cannot not fall within a Frokjer-type exception. Eighth Circuit precedent requires a represented plaintiff to be explicit in her suit against a public official in his individual capacity. Adeogun never uses the word "individual" in the Complaint. Instead, she identified Pavlak in the case caption as "David Pavlak, Police Officer." In addition, there are no other indicators Pavlak was on notice of claims against him in his individual capacity. The docket shows no indication Pavlak was personally served. See Summons [Docket Nos. 7 and 8] (showing summons returned executed from the City of St. Paul and the City of St. Paul Police Department). The City Attorney has represented the interests of both the City and of Pavlak in his official capacity as a St. Paul Police Officer. Pavlak has not retained personal counsel. Finally, the City communicated the Complaint's deficiency but Adeogun made no effort to cure it, deciding instead to rest on the Complaint as it stands. Therefore, the Court must assume Pavlak is sued in his official capacity only.

  **2. Official Capacity**

"A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006) (citing Graham, 473 U.S. at 165). A municipality, such as the City, may be liable under § 1983 only where a policy or custom of that entity caused the alleged constitutional violation. Monell, 436 U.S. at 690-92. Stated another way, a local government is liable under § 1983 only where its policy or custom is the "moving force" behind a constitutional violation. See id. at 694-95. Under certain circumstances, a municipality's failure to adequately train its police officers can be such a policy or custom. City of Canton v. Harris, 489 U.S. 378, 380 (1989). "[T]he inadequacy

of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388. In the Eighth Circuit, deliberate indifference must be established by showing that a municipality had notice that its procedures were inadequate and likely to result in a violation of constitutional rights. See Thelma D. v. Bd. of Educ., 934 F.2d 929, 934 (8th Cir. 1991). A plaintiff can show such notice either by showing: (1) failing to train is so likely to result in a constitutional violation that the need for training is patently obvious or (2) a pattern of constitutional violations put the municipality on notice that its employees' responses to recurring situations are insufficient. Id. at 934-35.

Adeogun does not argue the City has a violative official policy, but rather contends the City trains its officers to use excessive force in routine misdemeanor traffic stops. Mem. Opp'n 14-16 (citing Hanson Aff. Ex. B, at 22, and Michael Gavigan Aff. [Docket No. 22] Ex. 8). Pavlak was asked under oath whether it is standard procedure "when a vehicle is being pursued for a minute and a half with the lights on to assume that it might be a felony?" Hanson Aff. Ex. B, 22. Pavlak answered, "absolutely." Id. Adeogun then argues that Pavlak's response coupled with the "fact" that she pulled over within ten seconds of noticing the police car with his lights flashing shows that the City trained Pavlak to respond to misdemeanor traffic violators with excessive force. Adeogun's argument is neither factually nor logically sound. Even if she did pull over within ten seconds of noticing Pavlak's emergency lights, Pavlak's testimony does not address how he was trained to handle a stop after pursuing a car for ten seconds and the testimony does not address the level of force needed for such a stop.

Adeogun has also failed to allege a widespread pattern of unconstitutional conduct by the

City's police officers in conducting traffic stops. No other examples of alleged misconduct have been pled beyond the allegations against Pavlak.

Next, Adeogun argues the letter she received from the Chief of Police shows the improper training of St. Paul police. Gavigan Aff. Ex. 8. But the internal investigations summary letter says nothing about the City's policies or customs; it simply informed Adeogun that the St. Paul Police Department did not find Pavlak's actions warranted disciplinary action. Id. In short, Pavlak's deposition testimony addresses when St. Paul police assume a felony is in progress, not the level of force needed to make a misdemeanor stop. The summary letter does not establish any policy or custom. Adeogun has offered no further evidence, proof, or allegations of a City policy or custom in violation of the constitution; therefore, summary judgment for Defendants is granted.

### 3. Qualified Immunity

Even assuming Adeogun properly pled a case against Pavlak in his individual capacity, public officials who "exercise some discretionary functions while carrying out their executive duties" are generally entitled to qualified immunity from § 1983 claims. Walden v. Carmack, 156 F.3d 861, 869 (8th Cir. 1998). Qualified immunity applies unless the official's conduct "violated clearly established statutory or constitutional rights of which a reasonable person would have known." Id. The court considers: "(1) whether the facts alleged or shown, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." Small v. McCrystal, 708 F.3d 997, 1003 (8th Cir. 2013). Courts have discretion to evaluate the second question before deciding the first question. Pearson v. Callahan, 555 U.S. 223, 236 (2009). Qualified immunity is "a question of law for the court, rather than the jury, to decide." Littrell v.

Franklin, 388 F.3d 578, 584-85 (8th Cir. 2004).

When an excessive force claim "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 394 (1989). As such, force used in the course of an arrest must be reasonable. Id. at 395-96. The officer's use of force must be viewed in context, with "careful attention to the facts and circumstances" of the case at hand. Id. at 396. The use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. If an officer's actions are objectively reasonable, qualified immunity will prevent liability. Id. at 397.

The Eighth Circuit Court of Appeals has explained how courts should evaluate the use of force during an arrest. See Chambers v. Pennycock, 641 F.3d 898, 905-08 (8th Cir. 2011). It is well established that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 905 (internal quotation omitted). "Police officers undoubtedly have a right to use some degree of physical force . . . to effect a lawful seizure, and reasonable applications of force may well cause pain or minor injuries with some frequency." Id. at 907 (citation omitted). "It remains firmly established that '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" Id. (quoting Graham, 490 U.S. at 396). "Resistance may justify the use of greater force." Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003).

Adeogun admits Pavlak was justified pulling her over for speeding and for failing to yield. Mem. Opp'n at 11 fn.3. However, she argues, Pavlak's unholstering his firearm and pointing it at her was an excessive use of force.

Adeogun undoubtedly had a jarring experience. Having a firearm drawn in one's

8

presence can be traumatic, but the emotional trauma induced does not necessarily mean the police officer's actions were improper. Police officers have a dangerous job and are often dealing with highly volatile circumstances. When a suspect fails to yield to a police vehicle responding to an emergency, and when the officer believes there may be a felony in progress, the officer should take appropriate precautions to ensure his safety and the safety of the public. Continuing to state the facts in the light most favorable to Plaintiff, Adeogun pulled over her Nissan SUV after she initially failed to yield. Pavlak shouted for her to exit her SUV, which she did. When she exited the SUV, Adeogun observed Pavlak had his firearm pointed at her. Adeogun became distraught and begged Pavlak not to shoot her. With his firearm still raised, Pavlak instructed Adeogun to walk toward him. He asked her several questions, holstered his firearm, and walked Adeogun back to her SUV to retrieve her license and registration for the purpose of issuing her a citation.

Adeogun argues no reasonable officer would have drawn his firearm for a "routine, petty misdemeanor traffic stop." But calling this stop a "routine, petty misdemeanor traffic stop" ignores how a reasonable officer on the scene would view the facts and circumstances of the evolving situation. First, there is nothing in the record to suggest what was "routine" about this situation. Pavlak was confronted with a vehicle traveling at least 80 mph in a 60 mph zone which failed to yield to his emergency signals for a period of time.[3] Hanson Aff. Ex. B, at 6. Adeogun has offered no evidence, much less allegations, that police officers routinely encounter speeding vehicles which fail to yield. Second, Adeogun ignores the limited nature of Pavlak's

---

[3] The amount of time Pavlak followed Adeogun is unknown. Adeogun claims it took her "approximately 10 seconds to pull over to the side of the road and completely stop *after* [she] heard and saw the police car." Adeogun Aff. [Docket No. 21] ¶ 8 (emphasis added). But, her version does not account for how long it took Adeogun to notice the police car. As Judge Tilsen told Adeogun at her Ramsey County District Court hearing, "ma'am, you did not see or hear the emergency vehicle's sirens and lights. I believe that you probably didn't see them. But you are, under this law, required to see them and required to pull over." Hanson Aff. Ex. B, at 3.

9

actions. In the aftermath of the stop, Pavlak may have cited Adeogun only for failure to yield and speeding, but when he pulled Adeogun over, he could not have known who would step out of the vehicle or how they would behave. Pavlak could not control Adeogun's reaction when she stepped out of her SUV, but the record shows that in response to her extreme reaction, he asked her a few questions, quickly assessed that the danger of the situation was minimal, holstered his firearm, and issued Adeogun an appropriate citation. A jury could not find these actions constituted excessive use of force sufficient to trump qualified immunity protections.

### 4. No Equal Protection Violation

Adeogun alleges Pavlak spoke to her in a demeaning and racist way. She asserts his manner of questioning her about whether she had a driver's license, registration, and insurance as well as the number of her children was blatantly racist or sexist. Adeogun argues that when a St. Paul internal investigation found no wrongdoing, the City essentially endorsed Pavlak's alleged conduct and confirmed the City has a custom of violating citizens' right to equal protection under the law. Further, Adeogun argues additional discovery will reveal Pavlak's conduct has occurred on other occasions.

The Equal Protection Clause "prohibits selective enforcement of the law based . . . on race." Whren v. United States, 517 U.S. 806, 813 (1996). A plaintiff asserting a § 1983 action of selective enforcement of the law based on Equal Protection must demonstrate both a discriminatory purpose and a discriminatory effect. United States v. Bell, 86 F.3d 820, 823 (8th Cir. 1996). "To show discriminatory purpose, the claimant must show the official's decision to enforce the law was at least partially based on race." Id. A plaintiff must also prove that similarly situated individuals were not arrested to show discriminatory effect. Johnson v. Crooks, 326 F.3d 995, 1000 (8th Cir. 2003).

As discussed above, the Court gave Adeogun an opportunity to conduct further discovery

10

and present additional evidence, but she declined to do so. Adeogun has presented no evidence of "similarly situated individuals" and has failed to suggest how Pavlak's decision to cite Adeogun for speeding and failure to yield is based on race, especially in light of her convictions on both counts. Therefore, summary judgment in favor of the Defendants is appropriate.

**C. Assault**

Under Minnesota law, to establish a claim of assault against an on-duty officer, Adeogun must demonstrate that an officer used excessive force. Paradise v. City of Minneapolis, 297 N.W.2d 152, 155 (Minn. 1980). As discussed above, excessive force was not used against Adeogun. As a result, her assault claim fails.

## V. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 14] is **GRANTED**. All claims in the Complaint [Docket No. 1] are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: January 7, 2014.